AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone:  510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
BRADY MURPHY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADY MURPHY<br><br>Plaintiff,<br><br>v.<br><br>CAJUN BOWL SAN MATEO LLC<br><br>Defendant. | CASE NO. 3:25-cv-02760<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>**2. Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**3. Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff BRADY MURPHY complains of Defendant CAJUN BOWL SAN MATEO LLC, and alleges as follows:

1.      **INTRODUCTION:**  On January 20, 2025, Plaintiff and his close friend Terrance went out to dinner at Cajun Bowl San Mateo located at 168 E 4th Ave, San Mateo, California 94401. During that visit, Defendant denied Plaintiff Brady Murphy equal access to and enjoyment of Cajun Bowl San Mateo because he is a disabled individual who uses a service dog to assist him with certain tasks related to his disability.  Further, Defendant's employees treated Plaintiff with disrespect and humiliated him due to the presence of his service dog.  Defendant also offered

qualitatively different and worse services to him than they give to other non-disabled patrons. This included but was not limited to harassing him about providing documentation and paperwork to prove his dog is a service dog, embarrassing Plaintiff and his friend, and once Plaintiff finally agreed to show the documentation for his service dog, Defendant's employees would only seat his party at a table in a separate room from the rest of the dinners.  He was completely segregated from the other patrons of the restaurant due to the presence of his service dog. This segregation was unnecessary and anything but "equal" treatment under the law.

2.    When Plaintiff arrived at the restaurant, Defendant's employees refused to seat and serve Plaintiff until he provided them with documentation proving the status of his service dog. Initially, Plaintiff informed Defendant's employees that it was contrary to the ADA to require documentation for service dogs. However, once it became clear to Plaintiff that he would not be seated until he showed Defendant documentation for his service dog, he relented and provided them with documentation. Plaintiff tried to hold his ground, but the argument with Defendant's employees wore him down.  He was hungry, tired, irritated, his legs were shaking, and his back was hurting.  Plaintiff knew he needed to sit down and have some water, so ultimately, rather than draw more unwanted attention to himself, Plaintiff produced an ID card identifying his disability and Regis as a service dog.  After Plaintiff showed the ID card, Defendant's employees allowed Plaintiff to eat at the restaurant, but relegated him to an empty, segregated and undesirable area of the restaurant. Further, Defendant had already ruined Plaintiff's meal because he had been harassed about his service dog repeatedly and had to reveal sensitive, private medical information about his disability.

3.    Although Plaintiff and his party were served food at the restaurant, Defendant's noncompliant service dog policy and poor employee training ruined their meal.  Additionally, Plaintiff had to essentially cajole his way into the restaurant, which non-disabled patrons did not have to do, and many disabled service dog users would not have the persistence to do. Further, Plaintiff's experience of being treated very poorly and essentially having to convince Defendant to provide him even minimal service left him emotionally drained and upset.  He does not want to experience the same treatment the next time he visits, so he is deterred from returning to Cajun

2

Bowl San Mateo until Defendant adopts an ADA compliant service dog policy and necessary training.

4.     The Defendant's decision to require an ID for service dogs contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements:

**Q17. Does the ADA require that service animals be certified as service animals**?

A. No. Covered entities may not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal, as a condition for entry.

**There are individuals and organizations that sell service animal certification or registration documents online. These documents do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

3

https://www.ada.gov/resources/service-animals-faqs/

5.    Plaintiff loves seafood, and despite his horrific experience at Cajun Bowl San Mateo, he thoroughly enjoyed the food.  Moreover, there are very few restaurants that offer an "all you can eat" seafood eating experience with such high-quality ingredients. Plaintiff intends to return to the restaurant in the future but cannot do so until the policies of the restaurant are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training. He has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate him for refusing him equal access to service at the restaurant because he is a disabled person who needs the assistance of his qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at Cajun Bowl San Mateo.

6.    **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

7.    **VENUE:**  Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and is proper because the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

8.    **INTRADISTRICT:**  This case should be assigned to the San Francisco intradistrict because the real property which is the subject of this action is in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

9.    **PARTIES:**  Plaintiff Brady Murphy is a "qualified" disabled person who uses the assistance of a service dog to alert him of the onset of seizures.  He suffers from epilepsy which causes Plaintiff to have grand mal seizures. Despite mitigation of his seizures with several medications, Plaintiff still experiences one to two breakthrough seizures a month, and in times of stress the frequency of his seizures can increase significantly.  Plaintiff relies on his service dog, a giant schnauzer named "Regis" to assist him with certain tasks related to his disability including alerting him of the onset of a seizure, leading Plaintiff to a safe place to have the seizure or

4

1  alerting him to lie down on the ground and positioning himself to cushion Plaintiff if he falls.

2  Regis was professionally trained by several different trainers with significant assistance from

3  Plaintiff. Plaintiff and Regis have been working together for over five years.  Plaintiff and Regis

4  reinforce their training together daily.  Plaintiff is a qualified person with a disability as defined

5  under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California

6  Government Code § 12926(1).

7          10.      Defendant CAJUN BOWL SAN MATEO LLC, is and was at all times relevant to

8  this Complaint the owner, operator, lessor and/or lessee of the subject business located at 168 E

9  4th Ave, San Mateo, California 94401, known as Cajun Bowl San Mateo.

10          11.      Cajun Bowl San Mateo is a place of "public accommodation" and a "business

11  establishment" subject to the requirements *among other things* of multiple categories of 42 U.S.C.

12  section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code

13  sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

14          12.      **FACTUAL STATEMENT:** Plaintiff Brady Murphy has been working with his

15  service dog Regis for over five years. Regis is a six-year-old giant schnauzer who was trained to

16  be a service dog since birth. Regis was both professionally trained by several trainers and

17  individually trained by Plaintiff to be a service dog.  Plaintiff has also continued to train Regis to

18  serve his specific needs throughout their relationship.  Regis is specifically trained to assist

19  Plaintiff with certain tasks including alerting Plaintiff prior to the onset of a seizure, leading

20  Plaintiff to a safe place or alerting him to lie down prior to a seizure, and cushioning Plaintiff's

21  fall if he collapses from a seizure.

22          13.      Regis is a working dog; he is not a pet.  Plaintiff and Regis have trained

23  extensively together, and they supplement that training daily.  Plaintiff takes Regis almost

24  everywhere with him in public.  It is important they stay together as much as possible because (a)

25  Regis provides important services for Plaintiff; and (b) it is part of the training and bonding

26  requirement that they be together constantly to maintain their bond.  With few exceptions, where

27  Plaintiff goes, Regis goes.

28          14.      Plaintiff and his friend Terrance enjoy dining at different restaurants throughout

the Bay Area together. They try to dine at a new restaurant every couple of weeks. On January 20, 2025, Plaintiff and his friend decided to try Cajun Bowl San Mateo. They were both looking forward to the "all you can eat" seafood experience advertised by Defendant.

15.    Plaintiff and his friend drove from Plaintiff's home in the East Bay to San Mateo to eat dinner at the restaurant. They arrived at the restaurant, and Plaintiff approached the hostess stand to request a table. As is his usual practice, Plaintiff was accompanied by his service dog Regis. Defendant's employee looked at Plaintiff and asked him if he wanted his food to go. Plaintiff explained that he and his friend would like a table for two so that they could eat at the restaurant.

16.    Defendant's employee told Plaintiff that dogs were not allowed inside the restaurant. Plaintiff explained to Defendant's employee that his dog, Regis is a service dog and is therefore allowed to accompany him inside the restaurant. Defendant's employee then asked Plaintiff to provide an ID proving that Regis is a service animal so that his party could eat at the restaurant. Plaintiff explained that although he does have paperwork for Regis identifying him as a service dog, the ADA does not require service dog users to provide an ID for their service dogs. Defendant's employee told Plaintiff that he had to provide the documentation because there were other customers in the restaurant. Plaintiff reiterated to Defendant's employee that he was not required to show identification per the ADA and state access laws, and he explained to them that the service dog documentation he carried with him disclosed personal medical disability information regarding his disability which he did not want or have to share with them.

17.    After Plaintiff and Defendant's employees had been discussing the issue for a few minutes, Plaintiff began to video the conversation so that he would have proof that his civil rights were being violated and evidence of his very poor treatment by Defendant's employees. After he started recording, Defendant's employees again told him that they needed to see documentation for his service dog. Then they told Plaintiff that they would call the police if he did not stop recording. Plaintiff explained that he was confident that it was legal to record since they were in a public place, and he encouraged them to call the police because his rights were being violated. Defendant's employees backed away from the host stand and made some phone calls.

6

18.     Plaintiff continued to wait near the host stand with Regis and his friend Terrance. After about five minutes of waiting for someone to return and seat them, Plaintiff began to get very tired, his legs started to shake, and his back started to hurt. He knew he needed to sit down and drink some water immediately. There was no place to sit down near the host stand, so Plaintiff ultimately informed Defendant's employees that he would show them his service dog documentation.  Plaintiff did not want to show Defendant's employee the documentation, which included his private medical information, but he felt as if he had no choice.  He and Terrance both really wanted to try the food at Cajun Bowl, and Plaintiff did not think he would be capable of standing up for much longer.

19.     After Plaintiff showed Defendant's employees the documentation for his service dog, they agreed to seat his party. Defendant's employee then led Plaintiff and his friend to a separate room which appeared to be a banquet room for larger parties inside the restaurant. No other restaurant patrons were seated in this room. They told Plaintiff that he could sit at a table in this segregated and completely separate area of the restaurant despite the fact that there were plenty of available tables in the main dining room.  When Plaintiff asked why they were being seated in the separate room, Defendant's employees told him that he had to sit there because Regis was too big to sit in the main dining area.

20.     It was very clear to Plaintiff that his party was being segregated from other restaurant patrons because he is a disabled patron who uses a service dog to ameliorate his disability.  He observed plenty of tables that would have been able to accommodate his party, including Regis, in the main dining room.  There was plenty of space between the tables to accommodate them in the main dining area. The statement that there was not enough space was patently absurd as there was an estimated 10' between the two rows of tables running parallel to one other in the main dining hall area that could accommodate Regis without disruption to operations, as well as space under and adjacent to several of the tables.

21.     Being alone in a separate area of the Cajun Bowl made Plaintiff feel like a second-class customer and significantly diminished the dining experience for Plaintiff's group.  It was very difficult to get the attention of a server from their isolated location in the restaurant.  At

times, they were left alone so long that they considered going in search of a server.  Both Plaintiff and his friend ordered the all you can eat menu which meant that they needed to request more food from a server each time they ran out.  Several times Plaintiff or Terrance ran out food and had to wait a while for their server to return try to flag them down. This was not the case for other patrons who were not segregated. Plaintiff genuinely enjoyed the food, however, his night was ruined by Defendant offering qualitatively different and worse services to him than they give to other non-disabled patrons.

22.    What should have been an enjoyable and rejuvenating evening catching up with his friend left Plaintiff feeling humiliated, emotionally exhausted, and depressed at not being allowed access to the restaurant with his service dog.

23.    Plaintiff has a desire to return to Cajun Bowl San Mateo because when he got a chance to try the food, it was excellent. However, Plaintiff will refrain from going back to the restaurant because his previous experiences have made it clear that Defendant does not maintain a service animal policy that complies with state and federal access laws.  It is also clear that Defendant's employees have not received training about how to interact with disabled patrons who rely on service dogs for assistance.

24.    Plaintiff wishes to return to Cajun Bowl San Mateo, but only *after* Defendant has implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the restaurant until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 U.S.C. §§ 12101 *et seq.*)**

25.    Plaintiff repleads and incorporates by reference, as if fully set forth again here, the factual allegations contained in Paragraphs 1 through 24, above, and incorporates them here by reference as if separately repled hereafter.

26.    In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to

8

be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals

with disabilities are to assure equality of opportunity, full participation, independent living and

economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and

unnecessary discrimination and prejudice denies people with disabilities the opportunity to

compete on an equal basis and to pursue those opportunities for which our free society is

justifiably famous." 42 U.S.C. § 12101(a).

27.    The ADA provides, "No individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation by any person who owns, leases, or

leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

28.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation

Act and in the Americans with Disabilities Act of 1990.

29.    Cajun Bowl San Mateo is a public accommodation under Title III of the ADA. 42

U.S.C. § 12181(7)(B).

30.    The ADA prohibits, among other types of discrimination, "failure to make

reasonable modifications in policies, practices or procedures when such modifications are

necessary to afford such goods, services, facilities, privileges, advantages or accommodations to

individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

31.    Under the "2010 Revised ADA Requirements: Service Animals," as published by

the United States Department of Justice, and distributed by the DOJ's Civil Rights Division,

Disability Rights Section, "Generally, title II and title III entities must permit service animals to

accompany people with disabilities in all areas where members of the public are allowed to go."

ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

32.    Defendant has a policy and practice of denying access to patrons of Cajun Bowl

9

San Mateo with service animals. The Defendant's decision to require an ID for service dogs and segregate disabled patrons of the restaurant who use service dogs from other patrons contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements:

**Q17. Does the ADA require that service animals be certified as service animals**?

A. No. Covered entities may not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal, as a condition for entry.

**There are individuals and organizations that sell service animal certification or registration documents online. These documents do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

https://www.ada.gov/resources/service-animals-faqs/

33.     On information and belief, as of the date of Plaintiff's most recent visit to Cajun Bowl San Mateo on or about January 20, 2025, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

34.     In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

35.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "restaurant." 42 U.S.C. § 12181(7)(B).

36.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or

11

1 class, directly, or through contractual, licensing, or other arrangements, with the opportunity to

2 participate in or benefit from a good, service, facility, privilege, advantage, or accommodation

3 that is not equal to that afforded to other individuals."

4 § 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or

5 procedures when such modifications are necessary to afford such goods, services, facilities,

6 privileges, advantages, or accommodations to individuals with disabilities...;"

7 § 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no

8 individual with a disability is excluded, denied service, segregated, or otherwise treated

9 differently than other individuals because of the absence of auxiliary aids and services...;"

10    The acts and omissions of Defendant set forth here were in violation of Plaintiff's rights

11 under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

12    37.    On information and belief, as of the dates of Plaintiff's encounters at the premises

13 and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have

14 denied and continue to deny full and equal access to Plaintiff and to other disabled persons who

15 work with service dogs, which violates Plaintiff's right to full and equal access and which

16 discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff

17 the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

18 accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

19    38.    Defendant's actions continue to deny Plaintiff's right to full and equal access by

20 deterring Plaintiff from patronizing Cajun Bowl San Mateo and discriminated and continue to

21 discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the

22 full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and

23 accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

24    39.    Under the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,*

25 Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights

26 Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis

27 of his disabilities in violation of sections 12182 and 12183 of this title.  On information and

28 belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other

disabled persons to "full and equal" access to this public accommodation since on or before

Plaintiff's encounters.  Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

40.    Plaintiff seeks relief under remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize Cajun Bowl San Mateo, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

## SECOND CAUSE OF ACTION:
## DAMAGES AND INJUNCTIVE RELIEF
## FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A PUBLIC ACCOMMODATION
### (Civil Code §§ 54 *et seq.*)

41.    Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 40 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

42.    Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

43.    Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of

training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

44.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

45.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

46.     Cajun Bowl San Mateo is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

47.     Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its place of business with his service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based on Defendant's illegal prohibition of his legally protected use of his service dog.  Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he seek to return to these facilities.  Plaintiff cannot return to Cajun Bowl San Mateo until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination daily since January 20, 2025, all to his statutory damages under California Civil Code §§ 54.1, 54.2, and 54.3.

48.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of here which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are

disabled, who require the assistance of service animals, from full and equal access to these public

facilities.  Such acts and omissions are the cause of humiliation and mental and emotional

suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class

citizen and serve to discriminate against him on the sole basis that he is a person with disabilities

who requires the assistance of a service animal.

49.    Plaintiff wishes to return to patronize Cajun Bowl San Mateo but is deterred from

returning to use these facilities, because the lack of access and the significant policy barriers will

foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable,

so long as such acts and omissions of Defendant continue, to achieve equal access to and use of

these public facilities.  Therefore, Plaintiff cannot return to patronize Cajun Bowl San Mateo and

its facilities and is deterred from further patronage until these facilities are made properly

accessible for disabled persons, including Plaintiff and other disabled individuals who require the

assistance of a service animal.

50.    The acts of Defendant has proximately caused and will continue to cause

irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to

Defendant's inaccessible policies.   As to Defendant that currently owns, operates, and/or leases

(from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to

enjoin and eliminate the discriminatory practices that deny full and equal access for disabled

persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

51.    Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any

continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained

of and to require Defendant to comply immediately with the applicable statutory requirements

relating to access for disabled persons.  Such injunctive relief is provided by California Civil

Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award

damages under Civil Code section 54.3 and other law and attorney fees, litigation expenses, and

costs under Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other

law, all as prayed below for.

52.    **DAMAGES:**  Because of the denial of full and equal access to the described

facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including, but not limited to, rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as stated below.  Defendant's actions and omissions to act constitute discrimination against Plaintiff because he was and is disabled and unable, because of the policy barriers created and/or maintained by Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize Cajun Bowl San Mateo and will continue to cause him damages each day these barriers to access and policy barriers are still present.

53.    Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this complaint was filed.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

54.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

16

55.     Plaintiff suffered damages as above described as a result of Defendant's violations.

Damages are ongoing based on his deterrence from returning to Cajun Bowl San Mateo.

WHEREFORE, Plaintiff prays for relief as stated below.

### THIRD CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED
### BY CIVIL CODE SECTION 51(f)

56.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the allegations contained in Paragraphs 1 through 55 of this Complaint and incorporates them herein as if separately re-pleaded.

57.     At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

58.     California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

59.     Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

60.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief under California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

61.     The actions and omissions of Defendant as alleged here constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs under California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for statutory and compensatory damages to Plaintiff, according to proof.

62.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs under California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

63.     Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as stated below.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendant as alleged herein, unless Plaintiff is granted the relief he requests.  Plaintiff and Defendant have an actual controversy and opposing legal positions on Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Brady Murphy prays for judgment and the following specific relief against Defendant:

1.    An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.  To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded should he desire to enter and use the services of Cajun Bowl San Mateo;

    c.  That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction under ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    d.  An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2.    An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4.    An award of prejudgment interest under Civil Code § 3291;

5.    Interest on monetary awards as permitted by law; and

6.    Grant any other relief that this Court may deem just and proper.

Date: March 24, 2025                         CLEFTON DISABILITY LAW


                                      ___/s/ Aaron M. Clefton
                                      By AARON M. CLEFTON, Esq.
                                      Attorneys for Plaintiff
                                      BRADY MURPHY

## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: March 24, 2025                         CLEFTON DISABILITY LAW


                                      ___/s/ Aaron M. Clefton
                                      By AARON M. CLEFTON, Esq.
                                      Attorneys for Plaintiff
                                      BRADY MURPHY

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES